1  JAMES ANDREW HINDS, JR. (SBN 71222)
   jhinds@jhindslaw.com
2  PAUL R. SHANKMAN (SBN 113608)
   pshankman@jhindslaw.com
3  HANNA B. RAANAN (SBN 261014)
   hraanan@jhindslaw.com
4  LAW OFFICES OF JAMES ANDREW HINDS, JR.
   21515 Hawthorne Blvd.
5  Suite 1150
   Torrance, California 90503
6  Telephone: (310) 316-0500
   Facsimile: (310) 792-5977
7
   Attorneys for Abdul Halim Sheikh, Chapter 11
8  Debtor and Debtor-in-Possession
9
10              **UNITED STATES BANKRUPTCY COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**
12                  **LOS ANGELES DIVISION**
13
   In re                              ) CASE NO. 2:09-bk-39652-AA
14                                     )
                                       ) (Chapter 11)
15  ABDUL HALIM SHEIKH,                )
                                       ) **DEBTOR'S MEMORANDUM OF LAW**
16                                     ) **IN SUPPORT OF CONFIRMATION OF**
                                       ) **THE DEBTOR'S THIRD AMENDED**
17                                     ) **PLAN OF REORGANIZATION UNDER**
         Debtor and Debtor-in-Possession. ) **CHAPTER 11 OF THE BANKRUPTCY**
18                                     ) **CODE**
                                       )
19                                     ) [Filed Concurrently with Declarations]
                                       )
20                                     ) **Confirmation Hearing:**
21                                     ) DATE:    February 2, 2011
                                       ) TIME:    10:00 a.m.
22                                     ) PLACE:   Courtroom # 1375
                                       )          255 E. Temple Street
23  _____)          Los Angeles, CA]
24
25      **TO THE HONORABLE ALAN M. AHART, UNITED STATES BANKRUPTCY**
26  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL CREDITORS**
    **AND PARTIES-IN-INTEREST:**
27  / / /
28
                                    1.

# TABLE OF CONTENTS

PAGE(s)

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

II.   RELEVANT FACTS SUPPORTING CONFIRMATION OF THE

      DEBTOR'S PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

III.  ARGUMENT IN FAVOR OF CONFIRMATION . . . . . . . . . . . . . . . . . . . .   6

      A.   The Burden of Proof Under § 1129 Of The Bankruptcy Code Is A
           Preponderance Of The Evidence . . . . . . . . . . . . . . . . . . . . . . . .   4

      B.   The Plan Meets All Conditions of § 1129 . . . . . . . . . . . . . . . . . .   4

      C.   The Debtor Has Complied With The Applicable Provisions of § 1129 of
           the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

      D.   The Plan Provides That Payments Made By The Debtor Or Services Or
           Costs And Expenses Are Subject To Court Approval . . . . . . . . . . . .  13

      E.   The Debtor Has Disclosed All Necessary Information Regarding Directors,
           Officers and Insiders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      F.   The Plan Does Not Provide For Any Rate Change Subject to Regulatory
           Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      G.   The Plan Is In The Best Interests Of All Creditors Of The Debtor . . . . .  16

      H.   Debtor Anticipates That The Plan Will Be Accepted by Class 1, Class
           3(A), Class 3(B), Class 3(C) and the Requirements of § 1129(a)(8) Will Be
           Satisfied as to Such Impaired Classes . . . . . . . . . . . . . . . . . . . . .  17

      I.   The Plan Provides for Payment in Full of All Allowed Administrative
           Claims, Priority Tax Claims and Other Priority Claims . . . . . . . . . . . .  18

      J.   At Least One Class of Impaired Claims Is Anticipated To Accept
           The Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

      K.   The Plan As Proposed By The Debtor Is Feasible . . . . . . . . . . . . . .  20

      L.   All Statutory Fees Have Been Or Will Be Paid . . . . . . . . . . . . . . . .  23

      M.   The Plan Adequately And Properly Treats Retiree Benefits . . . . . . . .  23

N.    The Plan Satisfies The "Cram Down" Requirements With Respect To Classes Because The Plan Does Not Discriminate Unfairly And Is Fair And Equitable With Respect To Such Class . . . . . . . . . . . . . . . . . . . . . 23

1.    The Plan Does Not Discriminate Unfairly . . . . . . . . . . . . . . . . . 24

2.    The Plan Is Fair and Equitable . . . . . . . . . . . . . . . . . . . . . . . 25

IV.    RELIEF UNDER BANKRUPTCY RULE 3020(e) IS APPROPRIATE . . . . . . . 25

v.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**PAGE(s)**

*CASES:*

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 North LaSalle St. P'ship.
(1999) 526 U.S. 434 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprs., Ltd. II (In re Briscoe
Enterprs. Ltd. II)
(5th Cir. 1993) 994 F.2d 1160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re 11,111, Inc.
(Bankr. D. Minn. 1990) 117 B.R. 471 . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Apex Oil Co.
(Bankr. E.D. Mo.) 118 B.R. 683 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Buttonwood Partners, Ltd.
(Bankr. S.D.N.Y. 1990) 111 B.R. 57 . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Chateaugay Corp.
(2d Cir. 1996) 9 F.3d 942 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Crowthers McCall Pattern, Inc.
(Bankr. S.D.N.Y. 1990) 120 B.R. 279, 290 . . . . . . . . . . . . . . . . . . . . 17

In re Delta Air Lines, Inc.
(Bankr. S.D.N.Y. 2005) Case No. 05-17923 . . . . . . . . . . . . . . . . . . . 26

In re Drexel Burnham Lambert Group, Inc.
(Bankr. S.D.N.Y. 1992) 138 B.R. 723 . . . . . . . . . . . . . . . . . . . 12, 14, 20

In re Elsinore Shore Assocs.
(Bankr. D.N.J. 1988) 91 B.R. 238 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Frontier Holdings, Inc.
(Bankr. S.D.N.Y. 2008) Case No. 08-11298 . . . . . . . . . . . . . . . . . . . 26

In re Future Energy Corp.
(Bankr. S.D. Ohio 1988) 83 B.R. 470 . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Johns-Manville Corp.
(Bankr. S.D.N.Y. 1986) 68 B.R. 618 . . . . . . . . . . . . . . . . . . 5, 8, 12, 20, 24

In re The Leslie Fay Companies
(Bankr. S.D.N.Y. 1997) 207 B.R. 764 . . . . . . . . . . . . . . . . . . 12, 16, 20, 22

In re Mirant Corporation
(Bankr. N.D. Tex. 2003) Case No. 03-46590 (DML) . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re One Times Square Assocs. Ltd. P'ship
(Bankr. S.D.N.Y. 1993) 159 B.R. 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Ngan Gung Restaurant
(Bankr. S.D.N.Y. 2000) 254 B.R. 566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Rivera Echevarria1
(Bankr. D.P.R. 1991) 29 B.R. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Texaco, Inc.
(Bankr. S.D.N.Y. 1988) 84 B.R. 893 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Toy & Sports Warehouse, Inc.
(Bankr. S.D.N.Y. 1984) 37 B.R. 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 15

In re UAL Corp.
(Bankr. N.D. Ill. 2002) Case No. 02-48191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re US Airways Group, Inc.
(Bankr. E.D. Va. 2003) Case No. 02-83984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re U.S. Truck Co.
(E.D. Mich. 1985) 47 B.R. 932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

In re Williams Commc'ns Group, Inc.
(Bankr. S.D.N.Y. 2002) Case No. 02-11957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re Woodmere Investors Ltd. P'ship
(Bankr. S.D.N.Y. 1995) 178 B.R. 346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 988) . . . . . . . . . . . . . . . . . . . . . 5

Koelbl v. Glessing (In re Koelbl)
(2d Cir. 1984) 751 F.2d 137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,12

Manati Sugar Co. v. Mock
(2d Cir. 1935) 75 F.2d 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)
(9th Cir. 1985)761 F.2d 1374 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

RB v. Bildisco & Bildisco
(1984) 465 U.S. 513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES:**

11 U.S.C.

§ 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 503(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 1122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8

§ 1123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7, 8

§ 1123 (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 1123 (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 1123 (a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 1123 (a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 1123 (a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 1123 (a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 1123 (a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

§ 1125(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 1125(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

§ 1126(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 1126(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 1126(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 1126(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 1126(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

§ 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

§ 1129(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

§ 1129(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 1129(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

§ 1129(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 1129(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 1129(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

§ 1129(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

§ 1129(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

§ 1129(a)(9)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 1129(a)(9)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 1129(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 1129(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

§ 1129(a)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

§ 1129(a)(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

§ 1129(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23, 24

§ 1129(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

§ 1129(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**OTHER AUTHORITIES:**

Federal Rules Of Bankruptcy Procedure

Rule 3020(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Rule 6006(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) . . . . 5

Collier on Bankruptcy

¶ 1123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

¶ 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 14, 21, 22

# I.

## PRELIMINARY STATEMENT

The Plan is the culmination of extensive, good faith, arm's-length negotiations between and among the Debtor, Oaktree Investment Fund (hereinafter referred to as "Oaktree"), Jaynes Corporation of California (hereinafter referred to as "Jaynes"), and other parties-in-interest.  Importantly, the Plan provides for the completion of the Oceanside Marketplace Center (hereinafter referred to as the "Oceanside Project"), payment of all of the subcontractors claims, and allows the Debtor to complete his litigation against East West Bank (hereinafter referred to as "EWB") that likely would not have been possible but for the agreements made by the Debtor during the course of this case.  Moreover, the Debtor has consensually resolved the only objection to confirmation (filed by Oaktree).  As such, confirmation is unopposed and actively supported by the representatives of the Debtor's principal financial stakeholders.

The Plan provides for a restructuring and reorganization of the Debtor that includes the elimination of substantial pre-petition debt and will permit the Oceanside Project to emerge as an economically viable business enterprise that will operate the Oceanside Marketplace effectively in an extremely challenging marketplace and further stabilize and solidify the Debtor's relationships with his tenants, vendors, lenders, and employees, all of whom are critical to the continuing viability and success of the Oceanside Project.

As set forth below, and as will be demonstrated at the Confirmation Hearing, the Plan satisfies all applicable requirements of title 11 of the United States Code (the "Bankruptcy Code"), including §§ 1122, 1123, and 1129 of the Bankruptcy Code, and should be confirmed.

Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan and Disclosure Statement or in the Bankruptcy Code

/ / /

2.

## II.

### RELEVANT FACTS SUPPORTING CONFIRMATION OF THE DEBTOR'S PLAN

In addition to the facts set forth below, many of the pertinent and salient facts related to the Debtor's reorganization are set forth in **(A)** the Fourth Amended Disclosure Statement relating to the Plan (Docket Item # 232) (hereinafter referred to as the "Disclosure Statement"), as amended per this Court's Order on the Third Amended Disclosure Statement on January 3, 2011 (Docket Item # 241) (hereinafter referred to as the "Disclosure Statement Order"), **(B)** the Declaration of Abdul Halim Sheikh in Support of Confirmation of the Debtor's Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Sheikh Dec."); **(C)** the Declaration of Denis Murphy in Support of Confirmation of the Debtor's Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Murphy Dec."), each dated January 12, 2011 and filed contemporaneously herewith (hereinafter collectively referred to as the "Confirmation Declarations), **(D)** the Certification of Hanna B. Raanan with Respect to the Tabulation of Votes on the Debtor's Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code (hereinafter referred to as the "Vote Certification"), to be filed following the deadline for receipt of Ballots on January 25, 2011 hereinafter referred to as (the "Vote Certification") , and **(E)** the Proof of Service filed on January 11, 2011 (Docket Item # 252) evidencing the timely service of the Plan, the Disclosure Statement, and related solicitation materials and notice of non-voting status which has been filed with the Bankruptcy Court (hereinafter referred to as the "Proof of Service").

All the facts contained in the Disclosure Statement, the Confirmation Declarations, the Vote Certification and the Notice Affidavit are incorporated herein by this reference as if set forth in full.

/ / /

/ / /

/ / /

3.

---

DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF  CONFIRMATION OF THE DEBTOR'S FOURTH
AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**III.**

**ARGUMENT IN FAVOR OF CONFIRMATION OF THE DEBTOR'S PLAN**

A.   The Burden of Proof Under § 1129 Of The Bankruptcy Code Is A
Preponderance Of The Evidence.

To confirm the Plan, the Debtor, as the Plan Proponent, must merely demonstrate that the Plan satisfies the provisions of § 1129 of the Bankruptcy Code by a preponderance of the evidence.  As set forth by the United States Court of Appeals for the Fifth Circuit in Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprs., Ltd. II (In re Briscoe Enterprs. Ltd. II) (5th Cir. 1993) 994 F.2d 1160, 1165:

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown.  See also In re Kent Terminal Corp. (Bankr. S.D.N.Y. 1994) 166 B.R. 555, 561 ("the final burden of proof at . . . the . . . confirmation hearings remains a preponderance of the evidence"); 7 Collier on Bankruptcy ¶ 1129.02[4], (15th ed. rev. 2009).

Through evidence to be adduced at the Confirmation Hearing (including, without limitation, the Disclosure Statement and Plan, the Confirmation Declarations, the Vote Certification, and the Notice Affidavit), the Debtor will demonstrate, by a preponderance of the evidence, that each of the subsections of § 1129 of the Bankruptcy Code has been satisfied with respect to the Plan.

B.   The Plan Meets All Conditions of § 1129.

(1)   The Plan Complies With All Applicable Provisions of the Bankruptcy Code

Pursuant to § 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  See also In re Toy & Sports

4.

1   Warehouse, Inc. (Bankr. S.D.N.Y. 1984) 37 B.R. 141, 149 ("In order for a plan of

2   reorganization to pass muster for confirmation purposes, it must comply with all the

3   requirements of Chapter 11 as stated in Code § 1129(a)(1)."). The legislative history of §

4   1129(a)(1) explains that this provision is intended to encompass the requirements of §§

5   1122 and 1123 governing the classification of claims and the contents of a plan,

6   respectively. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); In

7   re Johns-Manville Corp. (Bankr. S.D.N.Y. 1986) 68 B.R. 618, 629, aff'd in part, rev'd in

8   part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987) Kane v. Johns-Manville Corp., 843

9   F.2d 636 (2d Cir. 988).  As demonstrated below, the Plan complies fully with the

10  requirements of §§ 1122 and 1123, as well as other applicable provisions of the

11  Bankruptcy Code.

12          (2)     The Plan Complies With § 1122 of the Bankruptcy Code

13          Section 1122 of the Bankruptcy Code provides as follows:

14          (a) Except as provided in subsection (b) of this section, a plan may place a claim

15          or an interest in a particular class only if such claim or interest is substantially

16          similar to the other claims or interests of such class.

17          (b) A plan may designate a separate class of claims consisting only of every

18          unsecured claim that is less than or reduced to an amount that the court approves

19          as reasonable and necessary for administrative convenience.

20  11 U.S.C. § 1122. Under this section, a plan may provide for multiple classes of claims

21  or interests as long as each claim or interest within a class is substantially similar to other

22  claims or interests in that class. "[C]lassification is constrained by two straight-forward

23  rules:  Dissimilar claims may not be classified together; similar claims may be classified

24  separately only for a legitimate reason." In re Chateaugay Corp. (2d Cir. 1996) 9 F.3d

25  942, 949.

26  / / /

27  / / /

28
                                    5.

The Plan provides for the separate classification of Claims and Interests into the following Classes based upon differences in the legal nature and/or priority of such Claims and Interests:

Class 1 (Secured Creditor) The secured Claim of East West Bank/ Oaktree Equities, Inc.; Oaktree Investment Fund, LLC with a claim secured by the real and personal property of the Oceanside Project.

Class 2A (Secured Creditor) The secured Claim of Secured Claim of Chase (WAMU) with a claim secured by the real property which is the Debtor's residence.

Class 2B (Secured Creditor) The secured Claim of Secured Claim of Western Federal Credit Union with a claim secured by the real property which is the Debtor's residence.

Class 3A (Secured Creditors) The Mechanics' Lien Claims of any and all subcontractors of Jaynes on the Oceanside Project with claims secured by the real and personal property of the Oceanside Project.

Class 3B (Secured Creditors) The Mechanics' Lien Claims of any and all subcontractors other than those related or arising from the work performed by or for Jaynes on the Oceanside Project with claims secured by the real and personal property of the Oceanside Project.

Class 3C (Secured Creditors) The Mechanics' Claim of Jaynes Corporation of California with a claim secured by the real and personal property of the Oceanside Project.

Class 4 (Unsecured Creditors) The claim held by unsecured creditors.

Class 5 (Insiders) The claims held by Insiders.

Each of the Claims or Interests in each Class is substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between

6.

1  or among holders of Claims or Interests.  The Debtor's classification scheme has a

2  rational basis because it is based upon the respective legal rights of each holder of a

3  Claim or Interest.  Moreover, the classification scheme does not manipulate class voting.

4  Accordingly, the classification of Claims and Interests in the Plan complies with § 1122(a)

5  of the Bankruptcy Code.

6          (3)    The Plan Complies with Section 1123 of the Bankruptcy Code

7          Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which

8  every chapter 11 plan must comply.  The Plan fully complies with each such requirement.

9          (4)    The Plan Complies with Section 1123(a)(1) of the Bankruptcy Code

10          Article X of the Plan designates Classes of Claims, other than Claims of the type

11  described in §§ 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code as required

12  by § 1123(a)(1).

13          (5)    The Plan Complies with Section 1123(a)(2) of the Bankruptcy Code

14          Article X of the Plan identifies each Class of Claims or Interests that is not

15  Impaired under the Plan as required by section 1123(a)(2).

16          (6)    The Plan Complies with Section 1123(a)(3) of the Bankruptcy Code

17          Article X of the Plan sets forth the treatment of Impaired Claims and Interests as

18  required by § 1123(a)(3).

19          (7)    The Plan Complies with Section 1123(a)(4) of the Bankruptcy Code

20          Article X of the Plan provides that the treatment of each Claim or Interest in each

21  particular Class is the same as the treatment of each other Claim or Interest in such

22  Class as required by § 1123(a)(4).

23          (8)    The Plan Complies with Section 1123(a)(5) of the Bankruptcy Code

24          The Plan provides for adequate means for the implementation of the Plan.

25  Specifically, Articles X and XI of the Plan and the various documents and agreements set

26  forth in the Plan Supplements provide adequate and proper means for the

27

28

7.

1  implementation of the Plan, including the list of executory contracts and unexpired leases

2  to be assumed.

3      (9)    Section 1123(a)(6) of the Bankruptcy Code Does Not Apply

4  Does not apply to the facts of this case.

5      (10)    Section 1123(a)(7) of the Bankruptcy Code Does Not Apply

6  Does not apply to the facts of this case.

7  Based upon the foregoing, the Plan complies fully with the requirements of §§

8  1122 and 1123 of the Bankruptcy Code and thus satisfies the requirements of §

9  1129(a)(1) of the Bankruptcy Code.

10

11  C.    The Debtor Has Complied With The Applicable Provisions Of § 1129 Of

12      The Bankruptcy Code.

13  Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent

14  "compl[y] with the applicable provisions of [the Bankruptcy Code]."  The legislative history

15  of § 1129(a)(2) reflects that this provision is intended to encompass the disclosure and

16  solicitation requirements under §§ 1125 and 1126 of the Bankruptcy Code.  See In re Toy

17  & Sports Warehouse Inc., 37 B.R. at 149; In re Texaco, Inc. (Bankr. S.D.N.Y. 1988) 84

18  B.R. 893, 906-07, appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988) ("The principal purpose

19  of [s]ection 1129(a)(2) is to assure that the proponents have complied with the

20  requirements of section 1125 in the solicitation of acceptances to the plan."); H.R. Rep.

21  No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section

22  1129(a)] requires that the proponent of the plan comply with the applicable provisions of

23  chapter, such as section 1125 regarding disclosure."); see also In re Johns-Manville

24  Corp. 68 B.R. at 630.  The Debtor has complied with the applicable provisions of the

25  Bankruptcy Code, including the provisions of §§ 1125 and 1126, regarding disclosure,

26  solicitation of votes and acceptance of the Plan.

27  / / /

28

8.

1    (1)  The Debtor Has Complied with § 1125 of the Bankruptcy Code

2   Section 1125 of the Bankruptcy Code provides in pertinent part:

3   (b) An acceptance or rejection of a plan may not be solicited after the

4   commencement of the case under [the Bankruptcy Code] from a holder of a claim

5   or interest with respect to such claim or interest, unless, at the time of or before

6   such solicitation, there is transmitted to such holder the plan or a summary of the

7   plan, and a written disclosure statement approved, after notice and a hearing, by

8   the court as containing adequate information. . . .

9   (c) The same disclosure statement shall be transmitted to each holder of a claim

10   or interest of a particular class, but there may be transmitted different disclosure

11   statements, differing in amount, detail, or kind of information, as between classes.

12 11 U.S.C. § 1125(b), (c).

13   By the Disclosure Statement Order, after notice and a hearing, the Court approved

14 the Fourth Amended Disclosure Statement pursuant to §1125 of the Bankruptcy Code as

15 containing "adequate information" of a kind and in sufficient detail to enable hypothetical,

16 reasonable investors typical of the ' Creditors to make an informed judgment whether to

17 accept or reject the Plan.  The Notice of Court's Order (1) Approving the Adequacy of the

18 Debtor's Amended Disclosure Statement; (1) the Scheduled Hearing Regarding

19 Confirmation of the Debtor's Plan; and (3) the Deadlines for Voting, Filing Objections, and

20 Submitting Evidence filed on January 3, 2011 (Docket Item # 242) (hereinafter referred to

21 as the "Approval Notice") also approved (a) all materials to be transmitted to those

22 holders of Claims and Interests entitled to vote on the Plan, (b) the timing and method of

23 delivery of the solicitation materials and (c) the rules for tabulating votes to accept or

24 reject the Plan.

25   As set forth in the Notice Declaration, the Disclosure Statement and the additional

26 solicitation materials approved by the Court in the Approval Order, were transmitted in

27 Solicitation Packages to each Creditor that was entitled to vote to accept or reject the

28

1  Plan, as well as to other parties-in-interest in this case, in compliance with § 1125 of the

2  Bankruptcy Code and the Approval Order.  Further, the Debtor did not solicit the

3  acceptance or rejection of the Plan by any Creditor prior to the transmission of the

4  Disclosure Statement.

5          (2)    The Plan Complies with Compliance with § 1126

6      Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of

7  a plan of reorganization.  Under § 1126, only holders of allowed claims and allowed

8  equity interests in impaired classes of claims or equity interests that will receive or retain

9  property under a plan on account of such claims or equity interests may vote to accept or

10  reject such plan.  As set forth in § 1126:

11      (a) The holder of a claim or interest allowed under section 502 of [the Bankruptcy

12      Code] . . . may accept or reject a plan. . . . .

13      (f) Notwithstanding any other provision of this section, a class that is not impaired

14      under a plan, and each holder of a claim or interest of such class, are conclusively

15      presumed to have accepted the plan, and solicitation of acceptances with respect

16      to such class from the holders of claims or interests of such class is not required.

17      (g) Notwithstanding any other provision of this section, a class is deemed not to

18      have accepted a plan if such plan provides that the claims or interests of such

19      class do not entitle the holders of such claims or interests to receive or retain any

20      property under the plan on account of such claims or interests.

21  11 U.S.C. § 1126(a), (f), and (g).

22      As set forth in the Disclosure Statement and in the Vote Certification, in

23  accordance with § 1126 of the Bankruptcy Code, the Debtor solicited acceptances or

24  rejections of the Plan from the holders of all Claims in each Class of Impaired Claims that

25  are to receive distributions under the Plan.  Claims in Class 1, Class 2(A), and Class 2(B)

26  and the sole class of Interests are designated under the Plan as Unimpaired.  As a result,

27  pursuant to § 1126(f), holders of Claims and Interests in those Classes are conclusively

28

10.

1  presumed to have accepted the Plan.  Claims in Class 3(A), Class 3(B), Class 3(C),
2  Class 4, and Class 5 are Impaired and holders of such Claims will receive distributions or
3  not receive distributions under the Plan.  As a result, pursuant to §1126(a), holders of
4  Claims in Class 3(A), Class 3(B), Class 3(C), and Class 4 were entitled to vote to accept
5  or reject the Plan.  Class 3(A) and Class 3(c) are presumed to have voted to accept the
6  Plan under prior Orders issued by the Court.

7  As to Impaired Classes entitled to vote to accept or reject a plan, §§ 1126(c) and
8  1126(d) specify the requirements for acceptance of a plan by classes of claims and
9  classes of equity interests, respectively:

10  (c) A class of claims has accepted a plan if such plan has been accepted by
11  creditors, other than any entity designated under subsection (e) of this section,
12  that hold at least two-thirds in amount and more than one-half in number of the
13  allowed claims of such class held by creditors, other than any entity designated
14  under subsection (e) of this section, that have accepted or rejected the plan.

15  (d) A class of interests has accepted the plan if such plan has been accepted by
16  holders of such interests, other than any entity designated under subsection (e) of
17  this section, that hold at least two-thirds in amount of the allowed interests of such
18  class held by holders of such interests, other than any entity designated under
19  subsection (e) of this section, that have accepted or rejected such plan.

20  11 U.S.C. § 1126(c) and(d).

21  As set forth in the Plan and Disclosure Statement, holders of Interests in Class
22  3(B), Class 4, and Class 5, will receive no distribution under, and thus are deemed to
23  have rejected, the Plan.  Nevertheless, as set forth below, pursuant to § 1129(b) of the
24  Bankruptcy Code, the Plan may be confirmed over the deemed rejection of Class 3(B),
25  Class 4, and Class 5 because the Plan does not discriminate unfairly and is fair and
26  equitable with respect to such Classes.  See 11 U.S.C. § 1129(b).  Based upon the
27  foregoing, the requirements of § 1129(a)(2) have been satisfied.

28

11.

C.    The Plan has Been Proposed in Good Faith and Not by Any Means
Forbidden by Law

(1)    The Plan Is Proposed in Good Faith

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  The United States Court of Appeals for the Second Circuit has defined the good faith standard as "requiring a showing that the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'"  Koelbl v. Glessing (In re Koelbl) (2d Cir. 1984) 751 F.2d 137, 139 (quoting Manati Sugar Co. v. Mock (2d Cir. 1935) 75 F.2d 284, 285); see also In re Johns-Manville Corp., 68 B.R. at 631-32.  In the context of a chapter 11 plan, courts have held that "a plan is proposed in good faith 'if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'"  In re The Leslie Fay Companies (Bankr. S.D.N.Y. 1997) 207 B.R. 764, 781 (quoting In re Texaco, Inc., 84 B.R. at 907).  "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan . . . ."  In re Leslie Fay, 207 B.R. at 781 (citations omitted).

The primary goal of chapter 11 is to promote the rehabilitation of the debtor. Congress has recognized that the continued operation of a debtor's business as a viable entity can benefit the national economy through the preservation of jobs and continued production of goods and services.  The Supreme Court similarly has recognized that "[t]he fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." RB v. Bildisco & Bildisco (1984) 465 U.S. 513, 528; see also In re Drexel Burnham Lambert Group, Inc. (Bankr. S.D.N.Y. 1992) 138 B.R. 723, 760 (quoting Bildisco & Bildisco, 465 U.S. at 528).  In addition, courts have stressed the importance of payment of creditors in chapter 11 cases. See In re Ngan Gung Restaurant (Bankr. S.D.N.Y. 2000) 254 B.R. 566, 571.

12.

1     The Plan proposed by the Debtor accomplishes these rehabilitative goals by

2 restructuring the Debtor's obligations and providing the means through which the Debtor

3 may continue to operate the Oceanside Project as a viable enterprise.  The Plan is also

4 in the best interests of Creditors, allowing them to realize the highest possible collective

5 recoveries under the circumstances.  See the Disclosure Statement, Exhibits 5 and 9;

6 Sheikh Dec. ¶¶ 2 through 10.

7     The Plan is the result of extensive good faith, arm's-length negotiations among the

8 Debtor, Jaynes, Oaktree, and many other parties in-interest.  The Plan is anticipated to

9 be overwhelmingly supported by the voting classes in these cases.  The anticipated

10 support of the Plan by such key constituencies underscores the fact that the Plan is

11 fundamentally fair to Creditors.  It is indisputable that the Plan promotes the rehabilitative

12 objectives and purposes of the Bankruptcy Code.

13

14     D.    <u>The Plan Provides That Payments Made By The Debtor Or Services Or</u>

15            <u>Costs And Expenses Are Subject To Court Approval</u>.

16     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees

17 and expenses paid by the plan proponent, by the debtor, or by a person receiving

18 distributions of property under the plan be subject to approval by the Court as

19 reasonable.   Specifically, section 1129(a)(4) requires that:

20        Any payment made or to be made by the proponent, by the debtor, or by a person

21        issuing securities or acquiring property under the plan, for services or for costs and

22        expenses in or in connection with the case, or in connection with the plan and

23        incident to the case, has been approved by, or is subject to approval of, the court

24        as reasonable.

25 11 U.S.C. § 1129(a)(4).

26     Section 1129(a)(4) has been construed to require that all payments of professional

27 fees that are made from estate assets be subject to review and approval as to their

28

13.

1    reasonableness by the Court.  See <u>In re Drexel Burnham Lambert Group Inc.</u>  (Bankr.

2    S.D.N.Y. 1992) 138 B.R. 723, 760; <u>In re Johns-Manville Corp.</u>, 68 B.R. at 632; 7 <u>Collier</u>

3    <u>on Bankruptcy</u> ¶ 1129.03[4] (15th ed. rev. 2009).

4          Pursuant to the interim application procedures established under § 331 of the

5    Bankruptcy Code, the Court authorized and approved the payment of certain fees and

6    expenses of professionals retained in this case.  All Professional Fee Claims remain

7    subject to final review for reasonableness by the Court under § 330 of the Bankruptcy

8    Code.  In addition, pursuant to § 503(b)(3) and (4) of the Bankruptcy Code, the Court

9    must review any application for substantial contribution to ensure compliance with the

10   statutory requirements and that the fees requested are reasonable.  Further, all payments

11   to be made in connection with the Effective Date or which relate to the success of the

12   reorganization or which otherwise are required to be disclosed have been disclosed

13   previously.

14         The foregoing procedures for the Court's review and ultimate determination of the

15   fees and expenses to be paid by the Debtor satisfy the objectives of § 1129(a)(4).  See <u>In</u>

16   <u>re Elsinore Shore Assocs.</u> (Bankr. D.N.J. 1988) 91 B.R. 238, 268 (requirements of §

17   1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative

18   expenses); <u>In re Future Energy Corp.</u> (Bankr. S.D. Ohio 1988) 83 B.R. 470, 488 ("Court

19   approval of payments for services and expenses is governed by various Code provisions.

20   <u>See, e.g.</u>, §§ 328, 329, 330, 331 and 503(b) and need not be explicitly provided for in a

21   Chapter 11 plan."); 7 <u>Collier on Bankruptcy</u> ¶ 1129.03[4] (15th ed. rev. 2009).

22         Based upon the foregoing, the Plan complies with the requirements of §

23   1129(a)(4).

24   / / /

25   / / /

26   / / /

27   / / /

28
                                    14.

E.    The Debtor Has Disclosed All Necessary Information Regarding Directors,
Officers and Insiders.

Section 1123(a)(7) of the Bankruptcy Code requires that a plan of reorganization "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan . . . ." This provision is supplemented by § 1129(a)(5) of the Bankruptcy Code, which directs a court to examine the methods by which the management of the reorganized corporation is to be chosen to provide adequate representation of those whose investments are involved in the reorganization — i.e. creditors. See 7 Collier on Bankruptcy ¶ 1123.01[7] (15th ed. rev. 2009).

On December 22, 2009, the Debtor filed his Fourth Amended Plan Supplement (Docket Item #232) disclosing the identity, affiliation, and nature of compensation for management of the Debtor post-plan confirmation. The continued employment of the Debtor as the manager of the Oceanside Project is essential to the ongoing viability of the Debtor's business. See In re Apex Oil Co. (Bankr. E.D. Mo.) 118 B.R. 683, 704-05 (if the debtors as well as the creditors' committee believe control of the business by certain individuals is beneficial, section 1129(a)(5) requirements are satisfied), aff'd in part, rev'd in part, 131 B.R. 712 (E.D. Mo. 1990); In re Toy & Sports Warehouse, Inc. 37 B.R. at 149-50 (the continuation of employment of the debtor's president and founder, who had many years of experience in the debtor's business, satisfied section 1129(a)(5)).

Based upon the foregoing, the Plan complies with both §§ 1123(a)(7) and 1129(a)(5) by properly and adequately disclosing or otherwise identifying the procedures for determining the identities and affiliations of all individuals proposed to serve on and after the Effective Date as managers of the Reorganized Debtor.

/ / /

/ //

/ / /

15.

F.     The Plan Does Not Provide For Any Rate Change Subject to Regulatory
       Approval.

Section 1129(a)(6) of the Bankruptcy Code is applicable only to debtors whose

rates are subject to governmental regulatory authority and requires that "[a]ny

governmental regulatory commission with jurisdiction, after confirmation of the plan, over

the rates of the debtor has approved any rate change provided for in the plan, or such

rate change is expressly conditioned on such approval."   In the instant cases, §

1129(a)(6) of the Bankruptcy Code is not applicable because the Plan is not premised on

any rate changes or the establishment of rates over which any regulatory commission

has jurisdiction or will have jurisdiction after Confirmation.


G.     The Plan Is In The Best Interests Of All Creditors Of The Debtor.

Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part:

With respect to each impaired class  of claims or interests —

(A) each holder of a claim or interest of such class —

(i) has accepted the plan; or (ii) will receive or retain under the plan on account of

such claim or interest property of a value, as of the effective date of the plan, that

is not less than the amount that such holder would so receive or retain if the debtor

were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .

This section is often referred to as the "Best Interests Test."  See In re Leslie Fay 207

B.R. at 787.  The Best Interests Test focuses on individual dissenting creditors rather

than classes of claims.  See id.; see also Bank of Am. Nat'l Trust & Sav. Ass'n v. 203

North LaSalle St. P'ship. (1999) 526 U.S. 434, 441 n.13.

Under the Best Interests Test, the court "must find that each [non-accepting]

creditor will receive or retain value that is not less than the amount he would receive if the

debtor were liquidated." In re Leslie Fay, 207 B.R. at 787 (internal quotation marks

omitted).  As § 1129(a)(7) of the Bankruptcy Code makes clear, the liquidation analysis

applies only to non-accepting impaired claims or equity interests.  Courts, in considering

16.

1    whether a plan satisfies the Best Interests Test, evaluate the plan as filed in light of the

2    projected dividend in a hypothetical liquidation of all of the debtor's assets under chapter

3    7 of the Bankruptcy Code.  See In re Crowthers McCall Pattern, Inc. (Bankr. S.D.N.Y.

4    1990) 120 B.R. 279, 290, 297.

5            In the instant case, the Best Interests Test is inapplicable to Class 1, Class 2(A),

6    and Class 2(B) because each such class is Unimpaired and, pursuant to § 1126(f) of the

7    Bankruptcy Code, is deemed to have accepted the Plan.  As described in ¶¶ 4 through

8    10 of the Sheikh Declaration and as illustrated below, based on assumptions described in

9    detail in the Liquidation Analysis attached to the Disclosure Statement, the values of the

10   estimated recoveries by the holders of Claims in Class 3(A), Class 3(B), Class 4, and

11   Class 5 provided for under the Plan are no less, and in most instances are significantly

12   more, than the values of the estimated recoveries that may be realized by such holders

13   upon disposition of the Debtor's assets pursuant to a hypothetical chapter 7 liquidation.

14   (See Murphy Dec. at ¶ 7.)

15           Based upon the foregoing analysis, the Plan clearly satisfies the requirements of §

16   1129(a)(7).  The projected recovery ranges listed herein for Classes of Mechanic's Lien

17   and Unsecured Creditors are estimates that are derived from the Financial Projections

18   annexed to the Disclosure Statement as Exhibit 5 and other assumptions as more fully

19   described in the Disclosure Statement.  Actual recoveries in the Classes of creditors may

20   be different than projected recoveries based upon, among other things the success of the

21   adversary proceeding against East West Bank.

22

23   H.    Debtor Anticipates That The Plan Will Be Accepted by Class 1, Class 3(A),

24          Class 3(B), Class 3(C) and the Requirements of § 1129(a)(8) Will Be

25          Satisfied as to Such Impaired Classes.

26           Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired

27   claims or interests accepts the plan, as follows: "With respect to each class of claims or

28   interests — (A) such class has accepted the plan; or (B) such class is not impaired under

17.

1    the plan. 11 U.S.C. § 1129(a)(8)." Class 1, Class 2(A), and Class 2(B) are Unimpaired

2    under the Plan and are conclusively presumed pursuant to section 1126(f) to have

3    accepted the Plan. The Debtor anticipates that Class 3(A), Class 3(B), Class 3(C), each

4    of which is Impaired, will affirmatively voted to accept the Plan. A summary of the

5    tabulation of the voting will be filed along with the required Summary of Ballots following

6    the deadline to return ballots on January 25, 2011.

7        The Debtor anticipates that Class 4, Class 4(A), and Class 5 will be deemed to

8    have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code. Nonetheless, as

9    set forth below, as to such Class, the Plan may be confirmed under the "cram-down"

10   provisions of § 1129(b) of the Bankruptcy Code.

11

12       I.     <u>The Plan Provides for Payment in Full of All Allowed Administrative Claims,</u>

13            <u>Priority Tax Claims and Other Priority Claims.</u>

14        Section 1129(a)(9) of the Bankruptcy Code requires that persons holding

15   claims entitled to priority under § 507(a) receive specified cash payments under the

16   plan. Unless the holder of a particular claim agrees to a different treatment with respect

17   to such claim, § 1129(a)(9) requires the plan to provide as follows:

18        (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of

19        [the Bankruptcy Code], on the effective date of the plan, the holder of such claim

20        will receive on account of such claim cash equal to the allowed amount of such

21        claim;

22        (B) with respect to a class of claims of a kind specified in section 507(a)(1),

23        507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder

24        of a claim of such class will receive —

25            (i) if such class has accepted the plan, deferred cash payments of a value,

26            as of the effective date of the plan, equal to the allowed amount of such

27            claim; or (ii) if such class has not accepted the plan, cash on the effective

28            date of the plan equal to the allowed amount of such claim;

18.

(C) with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive on account of such claim regular installment payments in cash —

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9).  As set forth in Section X(b) of the Plan, the Plan satisfies the requirements of § 1129(a)(9) in that the professionals have all agreed to the payments over time in satisfaction of their allowed final fees and expenses.

Lastly, the Plan satisfies the requirements of § 1129(a)(9)(C) and § 1129(a)(9)(D) in respect of the treatment of Priority Tax Claims under § 507(a)(8).  Section 1129(a)(9)(C) permits deferred payments over a period of five-years from the date of the order for relief so long as the amount so paid has a value, as of the effective date of the plan, equal to the allowed amount of the priority tax claim.  Section 1129(a)(9)(D) requires that secured tax claims must be treated similarly as unsecured tax claims.   Pursuant to Section X(c) of the Plan, the Reorganized Debtor will pay holders of Allowed Priority Tax Claims, unless such holder agrees to a different treatment, either "[quote from the Plan]"

Based upon the foregoing, the Plan satisfies the requirements of § 1129(a)(9) of the Bankruptcy Code.

19.

J.    <u>At Least One Class of Impaired Claims Is Anticipated To Accept The Plan</u>.

Section 1129(a)(10) of the Bankruptcy Code provides that: If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10); see <u>In re Martin</u> (Bankr. D. Mont. 1986) 66 B.R. 921, 924 (where three classes of impaired creditors accepted the plan, exclusive of insiders, the requirement of § 1129(a)(10) was satisfied).

The Plan clearly satisfies this requirement because Class 1 and Class 3(c) – each of which is Impaired – are anticipated to vote to accept the Plan.

K.    <u>The Plan As Proposed By The Debtor Is Feasible</u>.

Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to confirmation, a court determine that a plan is feasible. Specifically, a court must determine that: confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. As described below, and as will be demonstrated at the Confirmation Hearing, the Plan is feasible within the meaning of this provision.

The feasibility test set forth in § 1129(a)(11) requires a court to determine whether a plan is workable and has a reasonable likelihood of success. See <u>In re Leslie Fay</u>, 207 B.R. at 788; <u>In re Woodmere Investors Ltd. P'ship</u> (Bankr. S.D.N.Y. 1995) 178 B.R. 346, 361; <u>Drexel Burnham</u>, 138 B.R. at 762; <u>In re Johns-Manville Corp.</u>, 68 B.R. at 635. The feasibility test does not require that success be guaranteed. See <u>Johns-Manville Corp.</u>, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); <u>see also</u> <u>In re U.S. Truck Co.</u> (E.D. Mich. 1985) 47 B.R. 932, 944 ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), <u>aff'd</u>, 800 F.2d 581 (6th Cir. 1986); <u>In re One Times Square Assocs. Ltd. P'ship</u> (Bankr. S.D.N.Y. 1993) 159 B.R.

20.

695, 709 ("'It is not necessary that the success be guaranteed, but only that the plan

present a workable scheme of reorganization and operation from which there may be a

reasonable expectation of success.'") (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at

1129- 54 (15th ed. 1992)), aff'd, 165 B.R. 773 (S.D.N.Y. 1994); In re Texaco, Inc.

(Bankr. S.D.N.Y.) 84 B.R. 893, 910 ("All that is required is that there be reasonable

assurance of commercial viability."), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); In re

Prudential Energy Co. (Bankr. S.D.N.Y. 1986) 58 B.R. 857, 862 ("Guaranteed success in

the stiff winds of commerce without the protection of the Code is not the standard under §

1129(a)(11).").

The key element of feasibility is whether there exists a reasonable probability that

the provisions of the plan can be performed.  The purpose of the feasibility test is to

protect against visionary or speculative plans.  As noted by the United States Court of

Appeals for the Ninth Circuit: "The purpose of section 1129(a)(11) is to prevent

confirmation of visionary schemes which promise creditors and equity security holders

more under a proposed plan than the debtor can possibly attain after confirmation."

Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.) (9th Cir. 1985)761 F.2d

1374, 1382 (quoting 5 Collier on Bankruptcy ¶ 1129.02, at 1129-36.11 (15th ed. 1984)).

However, just as speculative prospects of success cannot sustain feasibility, speculative

prospects of failure cannot defeat feasibility.  The mere prospect of financial uncertainty

cannot defeat confirmation on feasibility grounds.  See U..S. Truck, 47 B.R. at 944.

Applying the foregoing standards of feasibility, courts have identified the following

factors as probative:

(1) the adequacy of the capital structure;

(2) the earning power of the business;

(3) economic conditions;

(4) the ability of management;

(5) the probability of the continuation of the same management; and

21.

1    (6) any other related matters which will determine the prospects of a sufficiently

2    successful operation of the business to enable performance of the provisions of the plan.

3    See In re Leslie Fay, 207 B.R. at 789 (citing 7 Collier on Bankruptcy ¶ 1129.LH[2], at

4    1129-82 (15th ed., rev. 1996)); see also Texaco, Inc., 84 B.R. at 910; Prudential Energy,

5    58 B.R. at 862-63.  The foregoing list is neither exhaustive nor exclusive.  Drexel

6    Burnham, 138 B.R. at 763; cf. In re U.S. Truck Co. (6th Cir. 1986) 800 F.2d 581, 589.

7    For purposes of determining whether the Plan satisfies the feasibility standard, the

8    Debtor has analyzed his ability to fulfill his obligations under the Plan.  As part of this

9    analysis, the Debtor has prepared the Financial Projections attached to the Disclosure

10   Statement as Exhibit 5.  The Financial Projections establish that the Debtor will have

11   sufficient cash to meet all of his obligations under the Plan.  The Plan eliminates tens of

12   thousands of dollars of Mechanics' Lien Claims from the Estate.  The Plan follows the

13   terms of the Oaktree-Stipulation and Order and allows the Debtor two-full years to

14   season the Oceanside Project based on mini-permanent financing from Oaktree.  The

15   Plan settles the Estate's claims against Jaynes and allows the Debtor to benefit from the

16   Stop Notice litigation prosecuted by Jaynes against EWB in the San Diego Superior

17   Court.  The Sheikh Declaration further shows that the Debtor's claims against EWB are

18   viable and the potential recovery to the Estate is to be in the range of $2 million.

19   As described in the Sheikh Declaration, the Debtor believes that the Plan satisfies

20   the feasibility requirement of § 1129(a)(11) of the Bankruptcy Code.  (See Sheikh

21   Declaration at ¶¶ 18 through 22.)  The Debtor's financial advisor, Dennis Murphy, agrees

22   with Mr. Sheikh's assessment.  As described in the Murphy Declaration, Mr. Murphy and

23   his staff reviewed the Financial Projections and believe that the Plan satisfies the

24   feasibility requirement of § 1129(a)(11) of the Bankruptcy Code.  (See Sheikh Dec. at ¶¶

25   18 through 22 and the Murphy Dec. at ¶¶ 10 through 13.)  Mr. Sheikh believes that the

26   Plan will result in the Reorganized Debtor emerging from bankruptcy as a viable

27   business.  (Sheikh Dec. at ¶ 22.)  Upon emergence, the Debtor will have reduced his

28   secured debt obligations.  (See Sheikh Dec. at ¶ 22.)  Based on the Financial

22.

1   Projections, the Debtor believes that he should have sufficient cash flow to service his

2   debt obligations and to fund operations at the Oceanside Project.  Id.

3       Based upon the foregoing, the Plan has a more than reasonable likelihood of

4   success and satisfies the feasibility standard of § 1129(a)(11).

5

6       L.    All Statutory Fees Have Been Or Will Be Paid.

7       Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930

8   of Title 28 [of the United States Code], as determined by the court at the hearing on

9   confirmation of the plan . . . ."  Section 507 of the Bankruptcy Code provides that "any

10  fees and charges assessed against the estate under [section 1930 of] chapter 123 of title

11  28" are afforded priority as administrative expenses.  In accordance with §§ 507 and

12  1129(a)(12) of the Bankruptcy Code, the Plan provides that all such fees and charges, to

13  the extent not previously paid, will be paid in cash on the Effective Date or as soon

14  thereafter as is practicable.  (See Plan, Section X ).  Thus, the Plan satisfies the

15  requirements of § 1129(a)(12).

16

17      M.    The Plan Adequately And Properly Treats Retiree Benefits.

18      Section 1129(a)(13) does not apply to the Debtor in that he does not have retiree

19  health and welfare benefits.

20

21      N.    The Plan Satisfies The "Cram Down" Requirements With Respect To

22            Classes Because The Plan Does Not Discriminate Unfairly And Is Fair And

23            Equitable With Respect To Such Class.

24      Section 1129(b) of the Bankruptcy Code provides a mechanism for

25  confirmation of a plan in circumstances where the plan is not accepted by all impaired

26  classes of claims and equity interests.  This mechanism is known colloquially as "cram

27  down."  Section 1129(b) provides in pertinent part:

28

                                        23.

1    Notwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable

2    requirements of [section 1129(a) of the Bankruptcy Code] other than [the

3    requirement contained in section 1129(a)(8) that a plan must be accepted by all

4    impaired classes] are met with respect to a plan, the court, on request of the

5    proponent of the plan, shall confirm the plan notwithstanding the requirements of

6    such paragraph if the plan does not discriminate unfairly, and is fair and equitable,

7    with respect to each class of claims or interests that is impaired under, and has not

8    accepted, the plan.

9  11 U.S.C. § 1129(b)(1).  Thus, under section 1129(b), a court may "cram down" a plan

10 over the deemed rejection by impaired classes of claims or equity interests that receive

11 no distributions under the plan as long as the plan does not "discriminate unfairly" and is

12 "fair and equitable" with respect to such classes.

13

14        1.    The Plan Does Not Discriminate Unfairly

15        Section 1129(b)(1) does not prohibit discrimination between classes; it prohibits

16 only discrimination that is <u>unfair</u>.  See <u>In re 11,111, Inc.</u> (Bankr. D. Minn. 1990) 117 B.R.

17 471, 478.  The weight of judicial authority holds that a plan unfairly discriminates in

18 violation of § 1129(b) of the Bankruptcy Code only if similar classes are treated differently

19 without a reasonable basis for the disparate treatment.  See <u>In re Buttonwood Partners,</u>

20 <u>Ltd.</u> (Bankr. S.D.N.Y. 1990) 111 B.R. 57, 63; <u>In re Johns-Manville Corp.</u>, 68 B.R. at 618,

21 636.  Accordingly, as between two classes of claims or two classes of equity interests,

22 there is no unfair discrimination if **(i)** the classes are comprised of dissimilar claims or

23 interests (<u>see. e.g.</u>, <u>Johns-Manville Corp.</u>, 68 B.R. at 636) or **(ii)** taking into account the

24 particular facts and circumstances of the case, there is a reasonable basis for such

25 disparate treatment.   <u>See, e.g.</u>, <u>Buttonwood Partners</u>, 111 B.R. at 63; <u>In re Rivera</u>

26 <u>Echevarria1</u> (Bankr. D.P.R. 1991) 29 B.R. 11, 13.

27        Under the foregoing standards, the Plan does not "discriminate unfairly" with

28 respect to the Impaired Classes that are deemed to have rejected the Plan.  The only

24.