**MICHAELS LAW GROUP, APLC**
A Professional Law Corporation
Jonathan A. Michaels, Esq. – State Bar No. 180455
Dana M. Heyde, Esq. – State Bar No. 247142
Ivan U. Cisneros, Esq. – State Bar No. 256232
2801 W. Coast Highway, Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
(jmichaels@michaelslawgroup.com)
(dheyde@ michaelslawgroup.com)
(icisneros@michaelslawgroup.com)

Attorneys for Tony Hsu, and Geoff Hsu

FILED

MAY 26 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ Deputy Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA- LOS ANGELES DIVISION

In re ABDUL HALIM SHEIKH,

Debtor.

___

TONY HSU, and GEOFF HSU,

Plaintiffs,

vs.

ABDUL HALIM SHEIKH, an individual; and DOES 1 through 100 inclusive,

Debtors.

Case No. 2:09-bk-39652-AA  (11 - 15442)
Chapter 11 Case
Honorable Alan M. Ahart
1:11-ap -01393-AA

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

1

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

# DECLARATION OF TONY HSU

I, Tony Hsu, hereby declare:

1.    I am a creditor of Debtor, Abdul Halim Sheikh. I submit this Declaration in support of the Motion for Order Permitting Creditors to File Late Proofs of Claims Against Debtor. The following is set forth on my personal knowledge and if called to testify, I would do so competently.

2.    I did not learn of Debtor's bankruptcy action until the end of 2010. Even though Debtor knew that my brother, Geoff Hsu, and I were claiming that we were owed money from him, he did not provide us with notice of the bankruptcy as required under the Bankruptcy Code. As a result, this is our first opportunity to request that our proofs of claims be late filed. My Proof of Claims is attached hereto as Exhibit "A".

3.    My claim against Debtor/Defendant, Abdul Halim Sheikh, arises from a breach of contract action that Debtor fraudulent induced me and my brother, Geoff Hsu, into in November 2008. Attached hereto as Exhibit "B" is a true copy of the Complaint my brother and I have filed against Debtor for breach of contract, false promise, and intentional misrepresentation, among other things.

4.    In September 2008, my brother, Geoff Hsu, and I were seeking to invest in a business. We found Debtor and his business, Food USA, LLC, listed on a Multiple Listing Site along with other businesses for sale. The listing stated that Food USA made $17,000 a month in gross sales, had $2,469 in expenses, and made $14,000 in net profit per month.

5.    Through Food USA's agent, we contacted Debtor who explained that he was selling his food distribution business, Food USA, LLC, located at 31244 Palos Verdes Drive West, Rancho Palos Verdes, California, 90274. Debtor explained that Food USA sold and distributed food and products,

2

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

1  such as exotic meats, beverages, meat, seafood, and paper products to clients,

2  including restaurants and hotels.

3       6.    We met Debtor several times so that we could discuss the

4  financial condition and business operations of Food USA.  At these meetings,

5  Debtor showed us Food USA's financial records, which included monthly sales

6  and purchases lists, and invoices of sales from 1999 to 2008.  These records

7  showed that Food USA made a substantial amount of money each month, and

8  after paying operating costs, the total net profits was at least $14,000 a month.

9  Based on the financial records and invoices that we saw, we reasonably relied

10  upon Debtor's statements concerning the financial viability of Food USA.

11       7.    We were also shown documents listing all of Food USA's

12  clients and saw file cabinets full of folders that related to a client.  Those records

13  supported Debtor's representations that Food USA had many clients, which

14  resulted in $14,000 in monthly net profits.

15       8.    During the pre-contract negotiations, Debtor represented that

16  Food USA was a reputable company with a good reputation.  Debtor also stated

17  that there were many clients, and that it was very easy to open new accounts.  To

18  show us the number of Food USA's existing clients, Debtor took us on a tour

19  where he introduced us to meet clients. Based on these meetings and

20  representations, we relied on Debtor's representations about the amount of

21  business conducted by Food USA.

22       9.    Food USA was initially listed for a sale price of $375,000, but

23  after several meetings, in November 2008, Debtor offered to sell the business to

24  us for $250,000.  We agreed with Debtor to a two-step purchase and entered into

25  a six month Partnership Agreement on November 30, 2008.

26       10.    Under the Partnership Agreement, the first step to the sale of

27  Food USA required us to invest $150,000. This was a good faith deposit that was

28

3

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING
CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

1   applied to the total purchase price if we decided to purchase the business at the

2   end of six months.  This provided an extended due diligence period in which we

3   had additional time to fully examine the legitimacy of the business.  To do this,

4   we made two payments of $75,000 in December 2008.  From December 2008

5   through May 2009, we would be partners with Debtor in Food USA.  It was

6   agreed that Plaintiff Geoff Hsu would work with Debtor during that time to gain

7   an in depth understanding of how Food USA operated.

8           11.    At the end of May 2009, we had the option to either walk

9   away from Food USA, or to invest an additional $100,000 to purchase the

10  remaining portion of the company. Section 4 of the Purchase Agreement

11  acknowledged that the partnership between Debtor and us would end on May 30,

12  2009, unless continued by us.

13          12.    Debtor's representations that Food USA made a profit of at

14  least $14,000 per month were guaranteed in Section 7.4 of the Partnership

15  Agreement. It was agreed that Debtor would split the expected monthly profit of

16  $14,000 or more with is, with 50% going to Debtor, 25% going to me, and 25%

17  going to Plaintiff Geoff Hsu.

18          13.    In the Partnership Agreement, Debtor represented that we

19  would receive at least $7,000 a month.  Debtor promised that if Food USA did

20  not make at least $14,000 a month in net profit, he would compensate us for the

21  difference to ensure that we received a profit of at least $7,000 per month.

22          14.    After signing the Partnership Agreement, Plaintiff Geoff Hsu

23  opened a bank account for Food USA, and deposited $100 into it on November

24  20, 2008.

25          15.    We quickly realized that the business did not generate the

26  profits touted by Debtor.  We had to make two capital contributions in December

27  2008, one on December 5 for $2,500 and one on December 8 for $5,000, to

28

4

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING
CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

enable Food USA to operate. On January 12, 2009, both my brother and I, and Debtor each received $12,000 as their December profit. However, since we had been required to pay $7,500 toward operating expenses, the $12,000 profit only yielded a profit of $4,500. Although Debtor was obligated to compensate us an additional $2,500 to ensure we made $7,000 for December, he did not.

16.   Soon after receiving the profit check, more money was needed to pay the operating expenses of Food USA and purchase new food to sell in the coming month. Again, Debtor refused to contribute to any of Food USA's expenses and we were forced to front the operating expenses by paying $3,400 on January 22, 2009, and $2,000 on January 30, 2009. For our January profit, on February 25, 2009, we were paid $7,500, but after deducting the $5,400 we paid in expenses, we only realized a profit of $2,100. In violation of the Purchase Agreement, Debtor did not compensate us to ensure we made $7,000.

17.   On February 25, 2009, we paid $2,000 for Food USA's operating and business expenses. We did not receive any profit payment for the month of February even though Debtor received $7,559 in profit for February on March 11, 2009.

18.   In March, we paid $3,000 on March 4, $2,500 on March 5, and $2,000 on March 26, for Food USA's for operating and business expenses. We did not receive any profit payment for the month of March, but on April 9, 2009, Debtor received $1,000 as his March profit.

19.   Because Debtor misrepresented the amount of gross profit Food USA made, and because we were required to reinvest their profit into Food USA to pay for business costs, we never received the expected profit. Additionally, Debtor never compensated us to ensure they made at least $7,000 as provided under the Purchase Agreement.

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

20. By April 2009, we realized that Debtor's representations about the company were completely false. We learned that Debtor did not have a good reputation in the community and that potential clients refused to conduct business with Food USA because they did not want to involve themselves with Debtor. Despite Debtor's representations that it would be easy to open new accounts, during the time we were involved with Food USA they were unable to open even one new account. I went to the business locations of several former clients, but not one of them would conduct business with Food USA while Debtor worked there.

21. It also became clear that Debtor had misrepresented the number of clients Food USA had. Many of the clients on the lists Debtor had shown us to induce us into investing in the business either refused to continue doing business with Food USA because they did not trust Debtor, or they were insolvent and unable to pay their outstanding bill.

22. For example, Debtor showed us old invoices documenting sales to Havana Mania which showed considerable sales even though Debtor knew that Havana Mania was ordering a much lower amount from Food USA. Pinas was another customer Debtor included on the client list that was shown to us, despite the fact that Pinas had stopped ordering from Food USA.

23. Further, we discovered that Debtor had not operated Food USA in a legitimate and lawful manner. Debtor had an arrangement with an employee of a client where Food USA would charge the client for food, which was never delivered, and the employee would sign the invoices acknowledging the delivery. The client would then pay Food USA for the delivery, and Debtor and the employee would split the money.

24. In April 2009, I confronted Debtor about his misrepresentations concerning the business. I demanded that Debtor return the

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING
CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

$150,000 we had invested in Food USA. Of course, Debtor refused. However, Debtor did credit $10,000 back to us on April 14, 2009 to reimburse us for the operating expenses they had paid.

25.    Based on Debtor's representations, we expected to receive profits of $7,000 per month, or $42,000 by May 2009. However, by the end of May 2009, we had only received $6,600 in profits.

| Month | Expected Profit | Actual Profit |
|---|---|---|
| December | $7,000 | $4,500 |
| January | $7,000 | $2,100 |
| February | $7,000 | $0 |
| March | $7,000 | $0 |
| April | $7,000 | $0 |
| May | $7,000 | $0 |
| **Total:** | **$42,000** | **$6,600** |

26.    Further, it was represented to us that the $7,000 of profit was just that, profit. We expected all expenses to be paid from Food USA's general account before we received a profit payment. Yet, during the six months we were involved in Food USA, we paid a total of $22,500 for Food USA's business expenses and operating costs, while Debtor had paid nothing. Even though we were reimbursed $10,000, we are entitled to contribution by Debtor for one-half the outstanding amount, or $6,200.

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**

| Month | Expenses Paid |
|---|---|
| December | $7,500 |
| January | $5,400 |
| February | $2,000 |
| March | $7,500 |
| April | ($10,000) |
| May | $0 |
| **Total:** | **$12,400** |

27.    By May 2009, we decided we would not be exercising our option to purchase Debtor's remaining interest in Food USA. I again asked Debtor to return our $150,000. Debtor agreed that if we could sell Food USA, Debtor would take $100,000 from the purchase price and give the remaining amount to us.

28.    During May 2009, two potential buyers contacted Defendant. One offered $289,000 to buy the business and the other offered $250,000. However, once Defendant received the offer, he insisted that he receive half of the purchase price, not just $100,000. My father, brother, and I were discussing this with Defendant when both buyers suddenly became disinterested and pulled their offers.

29.    I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on May 2𝟺, 2011, in Long Beach, California.

_____
Tony Hsu, Declarant

**DECLARATION OF TONY HSU IN SUPPORT OF MOTION FOR ORDER PERMITTING CREDITORS TO FILE LATE PROOFS OF CLAIMS AGAINST DEBTOR**